**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JASMINE ADAMS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIV. ACT. NO. 2:20-cv-27-TFM-N** |
| | ) | |
| **DEMOPOLIS CITY SCHOOLS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The death of a child is tragic and even more so if it is by suicide. Regardless of the legal issues in this case, the death of McKenzie Adams is a stark reminder of the tragedy of suicides and the effect on those left behind wondering why.

Pending before the Court are *Defendants' Motion for Summary Judgment and Brief in Support of Defendants' Motion for Summary Judgment* (Docs. 180, 181, filed July 14, 2021). The Court has considered the Defendants' motion and brief, the Plaintiffs' responsive brief (Doc. 189, filed August 19, 2021) and evidence, the Defendants' reply brief (Doc. 190, filed September 2, 2021), the arguments of counsel during the lengthy hearing held November 22, 2021, and relevant law. As a result, the Court finds Defendant's motion for summary judgment (Doc. 180) is due to be **GRANTED** for the reasons articulated below.

## I.   PARTIES[1] AND JURISDICTION

Plaintiffs Jasmine Adams ("Jasmine"), individually as the mother of McKenzie Adams

---

[1] For the purposes of clarity, the Court will use the first names of the individuals. McKenzie is the nine-year old decedent. Jasmine is her mother. Janice is her grandmother with whom McKenzie lived.

("McKenzie")[2], and McKenzie's grandmother Janice Adams ("Janice"), as the personal representative of McKenzie's estate (collectively, "Plaintiffs"), assert claims against Defendants Demopolis City Schools ("DCS"), former DCS superintendent Kyle Kallhoff ("Kallhoff"), former U.S. Jones Elementary School's Principal Tori Infinger ("Infinger"), former U.S. Jones Elementary School's Assistant Principal Tracy Stewart ("Stewart"), and U.S. Jones Elementary School fourth grade teacher Gloria Mims ("Mims") (collectively, "Defendants").  Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, 20 U.S.C. § 1681, *et seq.*, and 32 U.S.C. § 2000d, seeking redress of injuries suffered by McKenzie and the Plaintiffs, due to deprivation of rights secured by the Fourteenth Amendment to the United States Constitution.  This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (civil rights and elective franchise).  Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' Alabama state law claims that relate to the 42 U.S.C. § 1983 civil rights action that form part of the same case and controversy.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the cause of action arose in Marengo County, Alabama, which is located within the Southern District of Alabama, Southern Division.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

This case arises from the tragic death of McKenzie by suicide on December 3, 2018, in the home of her grandmother, Janice, where McKenzie lived.  At the time, McKenzie was a 9-year-old fourth grader at U.S. Jones Elementary School, which is a part of the Demopolis, Alabama,

---

[2] Normally the Court would redact the name of a minor.  Here, concealment of the minor's identity is not required because the minor is deceased, and the Complaint fully identifies her.

City School System.  Janice testified that on the date of her death McKenzie attended school and came home as usual, around 3:45 p.m.  *See* Doc. 189-11, Janice Depo., at 44.  She seemed "a little quieter than usual but had a snack and began her homework."  *Id*. at 45.  Janice could not recall anything different about her behavior and had absolutely no reason to believe she might do something to harm herself.  *Id*. at 45-46.  Plaintiffs attribute McKenzie's suicide to bullying and harassment they say McKenzie endured at school; the Defendants' alleged failure to implement appropriate policies to prevent bullying; and their failure to train school staff adequately in recognizing and responding to bullying behavior.

In response to a report from Janice in late October 2018, Ms. Stewart prepared a plan to deal with any student harassing or bullying McKenzie.  *Id.* at 83-88.  The plan was acceptable to Janice.  *Id.* at 88-89.  Janice never had any reason to follow up with Ms. Stewart.

**B.    Procedural Background**

Plaintiffs filed their Complaint on January 16, 2020.  Doc 1.  In response, Defendants filed an Answer on February 13, 2020.  Doc. 13.  Plaintiffs filed a First Amended Complaint on April 23, 2020, in which U.S. Jones Elementary School was terminated as a defendant.  Doc. 27.  Subsequently, the Court denied Defendants' motion for judgment on the pleadings as moot.  Docs. 16, 28.  Defendants filed an Answer to First Amended Complaint on May 7, 2020.  Doc. 36.  After the Court granted leave to amend their Complaint, Plaintiffs filed a Second Amended Complaint on July 10, 2020.  Doc. 44.  Defendants filed an Answer to Second Amended Complaint on July 24, 2020.  Doc. 45.

In the Second Amended Complaint, now the operative pleading, Plaintiffs assert eleven counts.

- Count I accuse DCS of violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

- Count II pleads violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d by DCS.

- Count III states a claim under 42 U.S.C. § 1983 for alleged violation by DCS, Kallhoff and Infinger of McKenzie's right to substantive due process under the 14th Amendment to the U.S. Constitution.

- Count IV asserts a § 1983 claim for violation of 14th Amendment equal protection rights by DCS, Kallhoff and Infinger.

- Count V argues wrongful death under Ala. Code § 6-5-391 arising from negligent, reckless or wanton hiring, training, retention and supervision of personnel by DCS.

- Count VI maintains a similar claim under Ala. Code § 6-5-391 against Infinger, Stewart and Mims for negligent, reckless or wanton conduct.

- Count VII, also under Ala. Code § 6-5-391 contends wrongful death resulting from Kallhoff's, Infinger's, Mims' and Stewart's negligent, reckless, wanton or wrongful actions or failure to act.

- Count VIII, again under 42 U.S.C. § 1983, avers DCS, Kallhoff and Infinger violated McKenzie's 14th Amendment substantive due process rights by failing to properly hire, train, and supervise DCS personnel.

- Count IX alleges a 42 U.S.C. § 1983 claim that all Defendants breached a duty to protect McKenzie by failing to train teachers and administrators adequately, resulting in a substantive due process violation.

- Count X advances a 14th Amendment substantive due process violation by DCS through

a policy or custom of inaction in failing to prevent harassment between students and failing to train teachers and administrators adequately.

- Count XI charges Kallhoff maintained a policy or custom of failing to prevent harassment between students and failing to enforce rules against bullying, thereby violating McKenzie's 14th Amendment substantive due process rights.

On July 14, 2021, Defendants filed their motion for summary judgment and brief in support. Docs. 180, 181, filed July 14, 2021. Plaintiffs filed a Response on August 19, 2021, to which Defendants filed a reply on September 2, 2021. Docs. 189, 190. On September 3, 2021, Plaintiffs filed a motion for Oral Argument which the Court granted. Docs. 191, 196. The Court held an oral argument hearing on November 22, 2021. The Court has considered the written submissions and the arguments of counsel during the lengthy hearing. Further, the motions are fully briefed and ripe for adjudication.

### III.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477

U.S. at 248, 106 S. Ct. at 2510).[3]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id.*

The movant bears the initial burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## IV.   DISCUSSION AND ANALYSIS

### A.   <u>Count I: Title IX</u>

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The U.S. Supreme Court established Title IX liability standards for student-student harassment in public schools. *See Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143  L. Ed. 2d 839 (1999). "[F]unding

recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650, 119 S. Ct. at 1675. "After Davis, then, a court confronted with a private damages action under Title IX must ask two questions: (1) was the school board deliberately indifferent to sexual harassment about which it had actual knowledge; and (2) was the sexual harassment so severe, pervasive, and objectively offensive that it can be said to have systemically deprived the victims of access to the educational opportunities of the school?" *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1285 (11th Cir. 2003).

The Court has carefully considered all the evidence properly submitted by the Parties under Rule 56. Testimony not shown to be within the personal knowledge of the testifying witness and contentions by the Parties not supported in the record have not been considered. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting the general rule that inadmissible hearsay cannot be considered on a motion for summary judgment, and that the rule applies equally to testimony given by deposition).

Plaintiffs identified incidents of alleged bullying witnessed by McKenzie's classmates. Unidentified students talked about McKenzie's shoes and hair, shoved her in the hallway, and pulled her hair. Also, Mims heard E.C. call McKenzie the N-word one time and as a result "wrote up" E.C. and sent him to the office. Doc. 189-13, C.J. Depo., at 21, 25, 49. C.J. also heard E.C. call McKenzie the N-word in another teacher's class and told Mims later when he got to her class. *Id*. at 49. K.M. heard unnamed "teachers" talk about students in the hallway pushing McKenzie and talking about her hair and skin color, which the teachers told them to stop if they saw or heard. Doc. 189-14, K.M. Depo., at 23-25. E.C. said "stuff like you're too dark" to McKenzie and Mims

knew about E.C.'s reputation for being mean.  Doc. 189-15, J.J. Depo., at 23-26.  When E.C. got in trouble by Mims for saying things about McKenzie, Mims sent him to Stewart's office.  *Id*. at 39-40.  Also in the record is a note exchanged between McKenzie and student E.C. in class with profanity written by each student, although more so by E.C., and entries from McKenzie's diary. None of this (except potentially the diary) links to or suggests suicide.

McKenzie's diary entries do not directly link her suicide to bullying at school. Plaintiffs supply such a connection through their expert witness' interpretation of the diary. There is no evidence the Plaintiffs or Defendants ever saw McKenzie's diary before her death.  Even if the Court construes the diary as evidence of severe and pervasive harassment at school, it provides no evidence of actual knowledge by the Defendants which is required for Title IX liability.[2]

Viewed in comparison to cases reviewed by the Eleventh Circuit Court, the evidence before this Court does not establish bullying or harassment of McKenzie that was sufficiently severe or pervasive to support Title IX liability for DCS.  *See, e.g. Hawkins v. Sarasota Cty. Sch. Bd*., 322 F.3d 1279 (11th Cir. 2003).  The Court held in *Hawkins* that complaints of harassment that are "too general" are not sufficient to provide the requisite actual knowledge for Title IX liability.  *Id.* at 1285. Much of the testimony from McKenzie's peers is "too general" to show actual knowledge by the Defendants in that it does not show the identity of the "teachers" who saw alleged incidents in the hallways, when, how many times or how frequently the incidents occurred, nor the identities of the student harassers.  The Supreme Court has cautioned that courts "must bear in mind that

---

[2]     The Plaintiffs offer a report and declaration of Bill Geiss, Ph.D., a clinical psychologist, concluding that bullying was the likely cause of McKenzie's suicide. The Defendants filed a motion to strike and objections to Dr. Geiss's testimony. The Court need not rule on the motion or objections in order to resolve the summary judgment motion, given the Court's conclusion that the evidence does not show actual notice of severe and pervasive harassment or that DCS personnel were deliberately indifferent.

schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Davis*, 526 U.S. at 651, 119 S. Ct. at 1675. It is not enough to show that a student has been teased or called offensive names. *Id*. at 652, 119 S. Ct. at 1675. "Due to their immaturity, children at various ages will invariably engage in some forms of teasing, shoving, and name-calling that 'target differences in gender.' Some risk of sexual harassment is inherent to the enterprise of public education, in particular, because public schools must educate even the most troublesome and defiant students." *Hill v. Cundiff*, 797 F.3d 948, 969 (11th Cir. 2015) (quoting *Davis*, 526 U.S. at 650, 119 S. Ct. at 1675). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The evidence before the Court does not raise a genuine issue of fact that DCS had actual knowledge of severe and pervasive harassment of McKenzie by other students.[3]

The note exchanged between McKenzie and E.C. contains inappropriate language directed by each student to the other, albeit to a lesser extent by McKenzie. The Court does not find that this note is a "single instance of sufficiently severe one-on-one harassment" that the Supreme Court theorized could be sufficient "to have the systemic effect of denying the victim equal access to an educational program or activity." *See Davis*, 526 U.S. at 652, S. Ct. at 1676. Even considering the note in conjunction with testimony of the other students, the evidence does not

---

[3]   The Court notes that an equal number of students who were deposed by the parties in this case, E.T., L.W., and J.W., testified that they never saw E.C. bullying McKenzie nor saw bullying behavior between other students. E.C., the alleged harasser, denied bullying McKenzie and testified that McKenzie was one of his best friends in fourth grade and the note was intended by both of them as a joke. Doc. 181-6, Depo. of E.C., at 29, 50-52. However, for the purpose of summary judgment, the Court must construe facts in the light most favorable to the plaintiff. This does not necessarily make them the ultimate actual facts.

show harassment sufficiently severe and pervasive to result in a systemic denial of access to education.

The Eleventh Circuit Court has observed that "[t]he real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend. In the school setting, students often engage in insults, teasing, shoving, and gender-specific conduct that is upsetting to the student subjected to it. Damages are not available for simple acts of teasing and mere name-calling among school children even where these comments target differences in gender." *Hawkins v. Sarasota Cty. Sch. Bd.,* 322 F.3d 1279, 1288 (11th Cir. 2003) (citations omitted).  The evidence before the Court shows the type of misbehavior described in *Hawkins*, but, as the Court observed there, even assuming E.C.'s behavior was severe, pervasive, and objectively offensive, it was not *so* severe, pervasive, and objectively offensive that it had the systemic effect of denying McKenzie equal access to education.

Even if the evidence of harassment would support Title IX liability, it does not show that the Defendants were deliberately indifferent.  After retrieving and reading the note she saw E.C. throw on the floor near her trash can, Mims reported it to Assistant Principal Tracy Stewart.  Doc. 181-13, Mims Depo., at 125-128.  Stewart contacted E.C.'s parent and assigned E.C. to in-school suspension. Doc. 189-8, Stewart Depo., at 100-103. When Stewart called to inform Janice that McKenzie had received a discipline referral for writing in the note, Janice reported that E.C. had been bullying McKenzie in class.  Doc. 189-11, Janice Depo., at 83-85.  Stewart implemented a plan for McKenzie to be allowed to leave class to go to Stewart's office any time McKenzie felt bothered or threatened in class.  *Id.* at 85-88.  Stewart told McKenzie's teachers she was to be allowed leave to report to Stewart as needed, and told other teachers to be alert for problems

between McKenzie and E.C. *Id.* at 85; Doc. 189-8, Stewart Depo., at 74-77. Stewart also followed up with the teachers and was in McKenzie and E.C.'s classrooms frequently to observe. Doc. 189-8, Stewart Depo., at 75-77. There is no evidence of any incidents between E.C. and McKenzie after the date of Janice's report to Stewart. McKenzie committed suicide over five weeks later. Janice testified she had no reason to, and never did, follow up with Stewart to determine if the plan for McKenzie's safety had been effective. Because McKenzie "was happy and smiling," Janice "felt like things were going okay" and nothing about McKenzie's behavior made her feel the need to talk to Stewart. Doc. 189-11, Janice Depo., at 87-88.

The Supreme Court emphasized that school districts may be liable for deliberate indifference to known acts of peer harassment does not mean the districts can avoid liability only by purging their schools of peer harassment entirely, or that administrators must engage in particular disciplinary action. *Davis,* 526 U.S. at 648, 119 S. Ct. at 1673. Schools "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 649, 119 S. Ct. at 1674. The Supreme Court also instructed in *Davis* that in an appropriate case, there is no reason why courts, on a motion for summary judgment, cannot identify a school district's response as not clearly unreasonable as a matter of law. *Id.* The Court finds that this is such an appropriate case, and that DCS's response was not clearly unreasonable as a matter of law.

Plaintiffs contend DCS's failure to approve an anti-bullying policy consistent with the Jamari Terrell Williams Student Bullying Prevention Act (the "Williams Act") enacted by the Alabama legislature is proof of deliberate indifference to bullying. To the contrary, DCS had a policy against bullying in place prior to the 2018-2019 school year and provided training to teachers and students about recognizing, preventing, and responding to bullying incidents. Doc. 189-2, Kallhoff Depo., at 80, 109, 113-118, 142. Plaintiffs have not shown that the existing policy

was somehow deficient or allowed bullying. Superintendent Kallhoff testified that the Williams Act was signed by the Governor in May 2018 and the Alabama State Department of Education ("ALSDE") distributed a model policy consistent with the Act to school systems in December 2018. *Id.* at 146. DCS voted to adopt the policy in February 2019. *Id*. at 177-178. Kallhoff testified that as a small school system, DCS generally waited for model policies from ALSDE rather than developing its own. *Id*. at 146, 178. The Court cannot agree with the Plaintiffs that those circumstances demonstrate deliberate indifference by DCS to bullying in its schools, *i.e.*, that the district's actions were clearly unreasonable. The Court grants summary judgment for DCS for Count I.

**B.      Count II: Title VI, Civil Rights Act of 1964 and Count IV: Substantive Due Process Violation, 42 U.S.C. § 1983**

Count II of the Complaint alleges a violation of Title VI by the Demopolis City Schools. Count IV states a claim under 42 U.S.C. § 1983 alleging violation of the Plaintiff's Fourteenth Amendment Equal Protection rights by the Demopolis City Schools, Kallhoff, and Infinger. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, prohibits discrimination based on race, color, or national origin in programs or activities that receive federal financial assistance. "Title VI itself provides no more protection than the equal protection clause – both provisions bar only intentional discrimination." *Elston v. Talladega Co. Bd. of Educ.*, 997 F.2d 1394, 1405 n. 11 (11th Cir. 1993) (citing *Alexander v. Choate*, 469 U.S. 287, 293 105 S. Ct. 712, 716, 83 L. Ed. 2d 661 (1985)). "[T]he equal-protection analysis will generally apply to Title VI claims as well." *Arrington v. Miami Dade Cty. Pub. Sch. Dist.*, 835 F. App'x 418, 420 (11th Cir. 2020). The Court has analyzed the Title VI and equal protection claims together. The parties have addressed the Title VI and equal protection claims according to Title IX standards, which the Court will do as well. *See Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S. Ct. 1511, 1516, 149 L. Ed 2d 517

(2001); *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1339 (11th Cir. 2002) ("[Title VI] is the model for Title IX and whose language Title IX copies nearly verbatim…we therefore read Titles VI and IX *in pari materia*.").

"To establish an equal protection clause violation, a plaintiff must demonstrate that a challenged action was motivated by an intent to discriminate." *Elston*, 997 F.2d at 1406 (citations omitted). For a supervisory official or government entity to be held liable for an alleged constitutional deprivation, the plaintiff must show that the violation resulted from a custom or policy of the supervisor or entity. "[A] supervisor or municipality may be liable if the alleged discriminatory practice was sufficiently widespread so as to put the defendants on notice of the need to act." *Arrington*, 835 Fed. App'x. at 421 (quotation marks and citation omitted).

As explained in addressing the Title IX claim, the Court finds that the evidence does not show severe and pervasive harassment or that the Defendants were deliberately indifferent to bullying in the schools in general or to any particular incident. The Plaintiffs have not shown that the Defendants maintained a policy or custom of ignoring bullying between students or that they treated McKenzie differently from any similarly-situated student because of race or gender. Nor is there evidence of a widespread pattern of bullying or harassment that would have put the Defendants on notice that their programs and efforts to prevent bullying or harassment were ineffective.

Plaintiffs argue that the Defendants improperly categorized E.C.'s misbehavior as infractions of the student code of conduct other than bullying. They contend E.C.'s conduct should have been classified as bullying and that he should have been punished more severely. The Supreme Court cautioned that "[c]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis,* 526 U.S. at 648, 119 S. Ct. at 1674. Stewart

and Infinger were experienced educators and administrators at the time of the alleged incidents. Stewart and Infinger knew the students in their school, including McKenzie and E.C., and had the opportunity to evaluate their attitudes, sincerity, and credibility in determining appropriate discipline for misbehavior. The administrators imposed the punishment that was in their professional judgment appropriate for the students' infractions. Even if this Court would have reached a different result, it cannot conclude that Stewart's and Infinger's actions were clearly unreasonable or intentionally discriminatory. Heeding the Supreme Court's caveat, this Court will not second-guess the educators' decisions in hindsight, and finds the Defendants were not deliberately indifferent to known harassment.

Plaintiffs also contend the Defendants' failure to adopt a policy consistent with the Williams Act prior to the school year exhibits deliberate indifference to bullying in the Demopolis schools. Doc. 189 at 45. Adopting policies is solely within the authority of the board of education. *See* Ala. Code §§ 16-1-30, 16-11-2, 16-11-9. The Plaintiffs offer no evidence that the then-applicable Board policy, which also attempted to prevent bullying, was somehow less effective than the model policy written by the Alabama Department of Education under the Williams Act. Further, it is purely speculative whether adopting a different policy sooner would have prevented McKenzie's suicide. Neither speculation nor conjecture is sufficient to preclude a summary judgment. McKenzie's classmates testified that their teachers and counselor addressed bullying throughout the year, and the evidence clearly shows that bullying and suicide prevention were addressed in teachers' training at the beginning of the year and periodically during the year. Doc. 189-2, Kallhoff Depo., at 81, 110, 114, 115, 117, 119, 120, 143. Plaintiffs have not shown that the training programs DCS had in place were ineffective to a point of deliberate indifference, nor have they identified any authority to establish that failure to adopt a *specific* anti-bullying policy

constitutes deliberate indifference. The Court grants summary judgment for DCS, Kallhoff and Infinger for Counts' II and IV.

**C.** **Counts III, VIII, IX, X and XI, 42 U.S.C. § 1983, Substantive Due Process Violations**

Counts III, VIII, IX, X, and XI of the Complaint state claims under 42 U.S.C. § 1983 against DCS and one or more individual Defendants for alleged violation of substantive due process rights. Each count alleges the Defendants breached a duty to protect McKenzie from bullying and harassment by other students and failed to train teachers and administrators adequately. Because there is no evidence of any constitutional violation, the individual Defendants are entitled to qualified immunity and all Defendants warrant summary judgment in their favor for all substantive due process claims.

Section 1 of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1988). Put simply, there are only limited circumstances in which government actors can be held liable for substantive due process violations.

In *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997) the Eleventh Circuit affirmed a judgment as a matter of law for the school board for a § 1983 substantive due process claim arising from a student's suicide at his home. The claims by the student's mother included that the board failed to train its employees in suicide prevention and intervention. The Eleventh Circuit held that before addressing whether the school board could be liable for a failure to train employees, it first had to determine whether those employees violated the plaintiff's constitutional rights by failing to discharge some constitutional duty owed to the deceased student. *Id.* at 569. The court found that because the school personnel had no duty to protect the student, the plaintiff "failed to establish a violation of any constitutional right." So, too, is the case here. Because there is no constitutional right to protection from third parties in a non-custodial setting, the Plaintiffs have not shown a violation.

The Plaintiffs argue that the Defendants acted arbitrarily in failing to adopt a policy consistent with the Jamari Williams Act before McKenzie's death, and that the Defendants' conduct was conscience-shocking in a constitutional sense in failing to train employees adequately on the dangers of bullying. The Eleventh Circuit has held in a school-setting case that even deliberate indifference, without more, does not rise to the conscience-shocking level required for a constitutional violation. *Davis v. Carter*, 555 F.3d 979, 984 (11th Cir. 2009).

The Court cannot agree, however, that the adoption of the policy of by DCS in February 2019 rather than prior to the school year was arbitrary. Superintendent Kallhoff testified that the Alabama State Department of Education provided a model policy to be used by local school systems, and that in those circumstances, DCS, as a small school system, generally waited for the model policy rather than developing its own. Doc. 189-2, Kallhoff Depo., at 146). The timing of DCS's adoption of the policy therefore was not arbitrary. The 11th Circuit has found conscience-

shocking behavior in a school setting in only two cases, both involving corporal punishment.  *See Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003); *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000)).  In each of those cases the perpetrators who committed conscience-shocking acts were state actors. Here, McKenzie's alleged harasser was a fellow student and her death was self-inflicted. The absence of affirmative intentional conduct by the Defendants distinguishes this case from *Neal* and *Kirkland* and allegations that the Board failed to adopt a specific policy or train employees adequately and failed to prevent bullying  does not shock the conscience in a constitutional sense under the Eleventh Circuit standard.  The Plaintiffs have failed to show that the Defendants deprived McKenzie of a right secured by the United States Constitution. In light of the absence of a constitutional violation, the Plaintiffs' argument that DCS failed to train employees adequately on the dangers of bullying cannot revive their substantive due process claim. "Section 1983 liability only attaches where the failure to train amounted to deliberate indifference to the rights of persons with whom the [state actors] come into contact. Analysis of a state entity's custom or policy is unnecessary, however, when no constitutional violation has occurred." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) (quotation marks and citation omitted). Even if the Defendants failed to protect McKenzie from bullying by other students, the failure did not violate the Due Process Clause. Consequently, the adequacy or inadequacy of training provided to DCS employees on bullying and suicide is immaterial.

The individual Defendants also have raised the defense of qualified immunity to the § 1983 claims. Qualified immunity protects government officials performing discretionary functions as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  The purpose of qualified immunity is to protect public

officials "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S. Ct. 1019, 1022, 127 L. Ed. 2d 344 (1994). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)).

Defendants who claim qualified immunity must show they acted "within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Whether defendants acted within their discretionary authority depends on whether they were performing legitimate job-related functions at the time of the challenged conduct, through means that were within their power to use. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The question is not whether the defendants were authorized to commit an allegedly unlawful act, but whether the conduct served a proper purpose and was within, or reasonably related to, the outer perimeter of the officials' discretionary duties. See *Herbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Once that is established, the burden shifts to the plaintiff to "show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

"To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. It is the plaintiff's burden to prove both prongs of this test. *Id*. A plaintiff need not identify a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (citation omitted). Clearly established law should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563

U.S. 731, 742, 131 S. Ct. 2074, 2084 (2011).  "As [the Supreme] Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."  *White*, --- U.S. at ---, 137 S. Ct. at 552.  The "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law *in the circumstances.*"  *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998) (emphasis in original, citations omitted).  This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law.  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 524 (1987).  Plaintiffs cite no case, in particular a case involving elementary school educators, which clearly establishes that the Defendants here should have acted differently.

Plaintiffs allege violation of Fourteenth Amendment rights under color of law.  The Defendants have shown to the Court's satisfaction that at all relevant times, each of them was exercising judgment in performing official duties as a DCS employee, within the scope of his or her authority.  Doc. 181-20, Kallhoff Depo.; Doc. 181-19, Infinger Depo.; Doc. 181-21, Mims Depo.; Doc. 181-22, Stewart Depo.  Plaintiffs therefore have the burden of proving each Defendant violated a constitutional right that was clearly established at the time.

As discussed, the evidence does not establish that the Defendants violated any constitutional right.  Neither DCS nor any individual Defendant had a duty to protect McKenzie from third parties.  The individual Defendants had no authority or duty to train DCS employees, and the Plaintiffs have identified no evidence McKenzie's suicide resulted from any lack of training.  The Eleventh Circuit Court has held that where a "plaintiff has failed to show a violation of due process . . . it necessarily follows that the defendants are entitled to summary judgment on

qualified immunity grounds." *Hartley v. Parnell*, 193 F. 3d 1263, 1261 (11th Cir. 1999) (quoting *Cottrell v. Caldwell*, 85 F. 3d 1480, 1491-92 (11th Cir. 1996)).

As discussed previously, the evidence does not show deliberate indifference by the Defendants. The students in her classes testified Mims did not tolerate talking in class, was strict, and kept her class quiet. Mims was never told about any issues between McKenzie and E.C. Doc. 189-1, Mims Depo., at 135. If Mims saw E.C. talking in class or disrupting others, she moved him to sit beside her desk where she could watch him more closely, and at other times reprimanded him in the hall or referred him to an administrator for discipline. *Id.* at 55, 56, 61, 89-90. When Janice told Stewart following the note incident that E.C. was bothering McKenzie, Stewart responded by instructing McKenzie's teachers to be alert for any difficulties between the students and she told Janice and McKenzie's teachers that if McKenzie felt harassed or threatened in any way, she could leave class to go to Stewart's office to report it. That plan was acceptable to Janice and Jasmine and they never felt a need to discuss it again with Stewart. Neither Janice nor Jasmine ever talked to Infinger or Kallhoff or any member of the Demopolis City Board of Education about any student bullying McKenzie at school. In addressing the deliberate indifference standard, the Eleventh Circuit has noted that many good faith but ineffective responses might satisfy school officials' obligation in responding to suspected or reported harassment. The Court explained "the relevant inquiry is not whether the measures taken were effective in stopping discrimination, but whether the school [officials'] actions amounted to deliberate indifference." *Sauls v. Pierce Co. School Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (addressing deliberate indifference standard with respect to teacher-student harassment). Here, there is no evidence of any incident between McKenzie and E.C. or any other student after the date E.C. and McKenzie exchanged the note. Janice acknowledged she never felt that there was a need for her to follow up with Stewart because

McKenzie was happy and smiling and Janice believed the problem had been handled. Doc. 189-11, Janice Depo. at 86-88. Even if the record established a constitutional violation, the Defendants are nevertheless entitled to qualified immunity because they were not deliberately indifferent.

The claim against Defendants Kallhoff and Infinger for failure to train or supervise personnel also fails because they had no duty to train subordinates. The federal courts in all three districts in Alabama have held that a supervisor may not be sued for negligent supervision of a subordinate. In *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001), addressing a state law negligent supervision claim, the court found that "negligent supervision or training requires as an element the existence of a master-servant relationship," and " [a] supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *See also Hand v. Univ. of Ala. Bd. of Trustees*, 304 F. Supp. 3d 1173, 1182 (N.D. Ala. 2018) ("Alabama law does not recognize a cause of action against a supervisor for that supervisor's negligent training or supervision of a subordinate."); *Ghioroaie-Panait v. Rolle*, Civ. Act. No. 3:17-CV-00698-ALB-WC, 2020 WL 130892, at *5, 2020 U.S. Dist. LEXIS 4285, *12 (M.D. Ala. Jan. 10, 2020) ("Whether a plaintiff may bring a claim against an employee for negligent supervision and training of a subordinate . . .is a question that has been frequently and unanimously answered by federal courts in Alabama with a resounding 'no.'").

Janice, McKenzie's grandmother with whom she lived, testified she had no reason to believe McKenzie might commit suicide even immediately before her death. Doc. 189-11, Janice Depo., at 47. No witness who has given testimony in this case had any reason to believe McKenzie might commit suicide or otherwise harm herself. Even in an involuntary custodial setting "[u]nder controlling case precedent, § 1983 requires that the defendant have 'notice of the suicidal tendency

of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual.'" *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty. Fla*., 402 F.3d 1092, 1105 (11th Cir. 2005) (quoting *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (*en banc*) (emphasis in original)).  McKenzie was not in the Defendants' custody or under their supervision at the time of her death.  The undisputed facts do not establish a substantive due process violation by the Defendants and they are entitled to a summary judgment in their favor.

D.    **Count V: Alabama Code § 6-5-391 Wrongful Death, Demopolis City Schools**

Count V alleges a claim for wrongful death under Ala. Code § 6-5-391, against DCS. The Court finds that this claim is barred by state immunity. The Alabama Supreme Court explained State immunity for public school boards as follows:

> "Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state." *Ex parte Tuscaloosa County*, 796 So.2d 1100, 1103 (Ala. 2000).
>
> > "For purposes of § 14 immunity, county boards of education are considered agencies of the State. *Louviere v. Mobile County Bd. of Educ*., 670 So.2d 873, 877 (Ala. 1995) ('County boards of education, as local agencies of the State, enjoy [§ 14] immunity.'). Thus, this Court has held that county boards of education are immune from tort actions. *See Brown v. Covington County Bd. of Educ*., 524 So.2d 623, 625 (Ala. 1988); *Hutt v. Etowah County Bd. of Educ*., 454 So.2d 973, 974 (Ala. 1984)."
>
> *Ex parte Jackson County Bd. of Educ*., 4 So.3d 1099, 1102–03 (Ala. 2008).

*Ex parte Hale Cty. Bd. of Educ*., 14 So.3d 844, 848 (Ala. 2009). "City boards of education are local agencies of the State; therefore, they enjoy constitutional immunity from tort actions." *Ex parte Phenix City Bd. of Educ*., 67 So.3d 56, 60 (Ala. 2011); *see also Parton v. Talladega City Bd. of Educ*., Civ. Act. No. 2:06-CV-00706-VEH, 2006 WL 8437055, at *8, 2006 U.S. Dist. LEXIS 114403, at *19-20 (N.D. Ala. Aug. 1, 2006) ("Under Alabama law, the Talladega City Board of Education is, therefore, an agency of the state. Accordingly, Plaintiffs' state law claims against the

Talladega City Board of Education are barred by sovereign immunity."). Because DCS is a state government agency and the Alabama Constitution bars any claim against state agencies under Alabama law, DCS is entitled to a summary judgment for Count V.

**E.     Count VI and Count VII: Alabama Code § 6-5-391, Wrongful Death Claims Against Individual Defendants**

Count VI alleges a claim under Alabama law against Infinger, Stewart and Mims for wrongful death allegedly arising from negligent, reckless or wanton breach of a duty to report, investigate and take action in response to bullying and harassment.  Count VII claims all individual Defendants negligently, recklessly, or wantonly failed to act in response to bullying of McKenzie. McKenzie committed suicide in her grandmother's home where no Defendant was present.  These claims are barred by state-agent immunity.  Further, as a matter of law, McKenzie's intentional act of killing herself broke any causal connection between acts or omissions of the Defendants and McKenzie's death.

"Pursuant to Article I, § 14 of the Alabama Constitution, 'the State of Alabama shall never be made a defendant in any court of law or equity.'  The Alabama Supreme Court has extended this sovereign immunity to municipal boards of education, as local agencies of the state, and to a person who acts as an agent of such a board if the act was committed while that person was performing certain types of duties that are 'discretionary' or require the exercise of judgment." *Worthington v. Elmore Cty. Bd. of Educ.*, 160 F. App'x 877, 883 (11th Cir. 2005).  The Alabama Supreme Court held:

> A state agent ***shall*** be immune from civil liability when the conduct made the basis of the claims against the agent is based upon the agent's
> . . .
> (2) exercising his or her judgment in . . . (d) hiring, firing, transferring, assigning, or supervising personnel; or
> . . .

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000) (emphasis in original).  "Generally, state agents are afforded immunity from civil liability when the conduct made the basis of the claim is based on the exercise of judgment in supervising and educating students." *Ex parte Nall*, 879 So.2d 541, 544 (Ala. 2003). "Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process." *Ex parte Trottman*, 965 So.2d 780, 783 (Ala. 2007); *see also Worthington v. Elmore Cty. Bd. of Educ.*, 160 F. App'x 877, 883 (11th Cir. 2005) ("Historically, the Alabama Supreme Court has held repeatedly that the supervision of students is an act involving discretion and judgment, and that persons engaged in such supervision are entitled to immunity."  Addressing a claim that a public school administrator failed to formulate and enforce proper procedures, the Alabama Supreme Court noted, "a state agent is entitled to immunity when formulating policies." *Ex parte Trottman*, 965 So.2d at 786 (quoting *Ex parte Cranman*, 792 So.2d at 405).  The court also noted that while at times it may question the wisdom of school officials' actions, "hindsight . . . is 20/20, and we will not second-guess their decision." *Id*. at 787.  The incidents between students alleged in this lawsuit occurred at U.S. Jones Elementary School, during school hours. The claims against the individual Defendants relate to their performance of official duties for supervising and educating students and supervising personnel.  Because each Defendant's actions were within the categories of conduct described in *Ex parte Cranman* and involved exercise of judgment in performing those duties, they are shielded by State-agent immunity unless the evidence shows that a recognized exception to immunity is applicable.

Immunity for school officials may be denied only upon the Plaintiffs' proof that the officials acted willfully, maliciously, fraudulently, in bad faith, beyond their authority or under a mistaken interpretation of the law. *Ex parte Nall*, 879 So.2d at 546. Plaintiffs have not identified any evidence in this case to establish an applicable exception. Neither Defendants Mims, Stewart or Infinger ever saw E.C. or any other student bully McKenzie. Doc. 181-21, Mims Depo.; Doc. 181-22, Stewart Depo.; Doc. 181-19, Infinger Depo. Superintendent Kallhoff did not have any interactions with McKenzie. On occasions when she saw E.C. talking to McKenzie or others during class, Ms. Mims moved him to another seat, took him into the hall to admonish him, or referred him to the school office for further discipline. When Mims found the note with profane language between E.C. and McKenzie, she reported it to Assistant Principal Stewart. Stewart investigated and imposed disciplinary measures for each student that were, in her judgment and discretion, appropriate under the circumstances. She notified each student's parent and gave E.C. additional punishment of in-school suspension. Infinger was not at the school the day E.C. and McKenzie were disciplined for the note and Stewart handled that incident. Doc. 189-3, Infinger Depo., at 138-139. Infinger had never received a report of bullying by E.C. *Id*. at 202. The Defendants' decisions and actions were clearly within the categories of conduct described in *Ex Parte Cranman* and are protected by state-agent immunity and there is no evidence that any exception to immunity is applicable under the circumstances of this case. The individual Defendants are therefore entitled to a summary judgment in their favor.

Further it is undisputed that McKenzie's death occurred by suicide. No witness in this case, including Janice, testified he or she had reason to believe on December 3, 2018, or at any time before then that McKenzie might harm herself. The Alabama Supreme Court has held that "suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law, and

civil liability will not be imposed upon a defendant for a decedent's suicide." *Gilmore v. Shell Oil Co.*, 613 So.2d 1272, 1278 (Ala. 1993). This further relieves the Defendants of liability for her death because McKenzie, tragically by her own hands, acted intentionally and deliberately in a manner that was calculated to result in her own death.

An unforeseen agency, which breaks the chain of causation that otherwise might have linked a defendant's alleged actions to a plaintiff's injury, has been referred to as an "intervening efficient cause." "In order for conduct to be considered an intervening efficient cause, it must (1) occur after the defendant's negligent act, (2) be unforeseeable to the defendant at the time he acts, and (3) be sufficient to be the sole cause-in-fact of the plaintiff's injury." *Gilmore,* 613 So.2d at 1275 (citing *General Motors Corp. v. Edwards*, 482 So.2d 1176, 1194-95 (Ala. 1985)). McKenzie's death by suicide occurred after any alleged act or inaction of the Defendants. The suicide was unforeseeable to the Defendants just as it was to Janice, and McKenzie's intentional act of taking her own life was the legal sole cause-in-fact of her death.

The Alabama Supreme Court later recognized two additional factors in analyzing suicide as an intervening cause: "the plaintiff's conduct (1) is so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a *matter of law*; and (2) is more than mere contributory negligence and is of a higher culpability level than the defendant's negligence." *Gilmore,* 613 So.2d at 1275 (quotation marks and citation omitted, emphasis in original). The undisputed facts establish these elements as well. As the Alabama Supreme Court noted, suicide is unforeseeable as a matter of law, and a nine-year-old child intentionally taking her own life is extraordinarily unexpected and unforeseeable, and is far more than contributory negligence. The Court finds that the Defendants' alleged acts were not the proximate cause of McKenzie's death and they are entitled to a judgment in their favor as a matter of law.

The Alabama Supreme Court has recognized only two exceptions to the general rule that suicide is an efficient intervening cause that precludes the defendants' liability: (1) where the relationship between a decedent and a defendant creates an expectation that the defendant will take reasonable steps to protect the decedent from deliberate and self-destructive injury, or (2) where the defendant created an uncontrollable impulse in another which led to suicide. *Prill v. Marrone*, 23 So.3d 1, 7 (Ala. 2009). The evidence before the Court does not support either of these exceptions.

Defendants had no relationship with McKenzie that could create an expectation they would protect her from self-destructive injury while she was at home with her grandmother, who also testified she had no reason to believe McKenzie might harm herself. The facts also cannot support any finding of "uncontrollable impulse," which "consists of a delirium, frenzy or rage, during which the deceased commits suicide without conscious volition to produce death." *Id*. at 8 (citation and internal quotations omitted). Janice testified McKenzie attended school on the date of her death and arrived home as usual, around 3:45 p.m. Doc. 189-11, Janice's Depo., at 45. She seemed "a little quieter than usual but had a snack and began her homework." *Id*. at 46. Janice could not recall anything different about her behavior and had absolutely no reason to believe she might do something to harm herself. *Id.* at 46-47. Janice's testimony – the only other person present at the time of McKenzie's death – does not show any delirium, frenzy or rage, and the circumstances of McKenzie's death support only a conclusion that for unknowable reasons, she consciously intended to take her own life. McKenzie's suicide therefore breaks any causal connection between alleged acts of the Defendants and her death, and the Defendants are entitled to a judgment as a matter of law.

The Alabama Supreme Court's recent opinion in *Rondini v. Bunn* does not alter this result. In *Rondini*, the U.S. District Court for the Northern District of Alabama certified to the Alabama Supreme Court the question whether suicide was an intervening cause breaking the chain of causation stemming from the defendant's *intentional* tort. *Rondini v. Bunn*, 434 F. Supp. 3d 1266 (N.D. Ala. 2020). In response, the Alabama Supreme Court stated:

> The question certified by the federal court concerns an alleged sexual assault. To answer that question, we need declare only that the suicide of a person who is the victim of one specific intentional tort – sexual assault – is not a superseding cause that will absolve the alleged assailant of liability as a matter of law. Whether other intentional torts stemming from a defendant's extreme and outrageous conduct that causes severe emotional distress to the victim might also support a wrongful-death action after a suicide is a question for another day.

*Rondini v. Bunn*, Civ. Act. No. 1190439, 2021 WL 1939171, at *5, 2021 Ala. LEXIS 39, at *13 (Ala. May 7, 2021). The Defendants here did not assault McKenzie. The very narrow additional exception recognized in *Rondini* is inapplicable. As no exception previously recognized by the Alabama Supreme Court applies to the circumstances of this case, the Defendants cannot be held liable for McKenzie's suicide or any alleged resulting damages to the Plaintiffs. The Court declines the Plaintiffs' suggestion that it should expand the *Rondini* exception beyond the specific facts of that case. The Defendants' Motion for Summary Judgment is granted for Counts VI and VII.

## V.   CONCLUSION

For the foregoing reasons, and based on the authorities cited, the Defendants' Motion for Summary Judgment (Doc. 180) is **GRANTED** as to all Defendants for all claims. The Court will issue a final judgment separately.

**DONE** and **ORDERED** this the 22nd day of March, 2022.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE